**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ANTONIO L. DOTSON                                                    PETITIONER

V.                                        NO. 4:13cv00731-DPM-JTR

SHELIA SHARP, Director,                                        RESPONDENT
Arkansas Department of Community Correction

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

## <u>INSTRUCTIONS</u>

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

Mail objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201-3325

# I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus filed by Antonio L. Dotson ("Dotson"),[1] challenging his February 2011 convictions from Pulaski County, Arkansas. *Doc. 2*. Before addressing Dotson's claims, the Court will summarize the procedural history of this case.

On December 6, 1999, police officers arrested Dotson at the Greyhound bus station in North Little Rock. According to the arrest report, he was in possession of approximately thirty-one pounds of suspected marijuana, ten grams of suspected cocaine, and a set of postal scales. The report noted that Dotson had an active parole violation warrant out of New York. *Doc. 2 at 16-19*.

On February 7, 2000, a criminal information was filed, in Pulaski County Circuit Court, charging Dotson as a habitual offender with: (1) possession of a controlled substance (cocaine) with intent to deliver; (2) possession of a controlled substance (marijuana) with intent to deliver; and (3) possession of drug paraphernalia. *Doc. 9-3*. On February 14, 2000 a bench warrant was issued to arrest Dotson for the charged offenses. On February 18, 2000, the warrant was served on Dotson in the

---

[1]Dotson currently is residing in Tennessee, on parole from the Arkansas Department of Correction. *Doc. 6*; *see Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963) (a criminal defendant who has been released from prison, but remains subject to the restrictions of parole, or other comparable restrictions, is considered to be "in custody" for habeas purposes).

Pulaski County Jail. *Dotson I, doc. 23-6.*[2]

On April 3, 2000, Dotson was released on a personal recognizance bond, which included certain conditions of release. *Id., doc. 23-7*. His trial was set for June 26, 2000. According to Dotson, he was "never released on his own free will" and "never left jail," but was "detained for New York authorities and extradited to New York for a parole violation." *Doc. 3 at 2; Doc. 11 at 3; Doc. 12-1 at 31*.

On May 10, 2000, Dotson wrote a *pro se* letter to Pulaski County Circuit Judge John Langston stating that he was incarcerated, on unrelated charges, in the Monroe County Jail in Rochester, New York. He requested that his June 26, 2000 trial be continued until November. *Dotson I, doc. 23-9.* On May 16, 2000, the trial court forwarded Dotson's May 10, 2000 letter to his Pulaski County public defender for "whatever action you deem appropriate." *Id., doc. 23-10*. Dotson's June 26, 2000 trial date was never continued.

On June 16, 2000, Dotson was released from the custody of New York authorities. *Doc. 9-2 at 26; Doc. 11 at 3; Doc. 12-1 at 25 & 31*.

On June 26, 2000, Dotson's public defender appeared for trial in Pulaski County Circuit Court. Because he was unaware that Dotson had been released from

---

[2]Many of the supporting documents were submitted as exhibits in Dotson's first § 2254 action, but were not resubmitted here. *See Dotson v. Holiday, et al.*, E.D. Ark. No. 4:11cv00012-DPM ("*Dotson I*").

incarceration, he advised the trial court that Dotson was "in jail" in New York. *Doc. 2 at 50.* The same day, an alias bench warrant was issued to arrest Dotson for failure to appear. *Dotson I, doc. 23-12 & doc. 31 at 6 (trial court docket sheet).*

On September 13, 2002, and again on October 31, 2008, Dotson's case was "pass[ed] to next call." *Id., doc. 31 at 7.*

Some time in December 2009, Dotson was arrested by authorities in Tennessee on the failure to appear warrant. On December 22, 2009, he appeared in municipal court in Millington, Tennessee, and executed a waiver of formal extradition to Arkansas. *Id., doc. 23-13.* On December 31, 2009, the Pulaski County Sheriff served the warrant on Dotson and took him into custody. *Id, doc. 23-12 & doc. 1 at 30.*

According to the Pulaski County Circuit Court docket sheet, on January 15, 2010, Dotson appeared in the trial court with a public defender for a bond hearing. The court granted a "joint mot[ion] to pass. *Id., doc. 31 at 7; Doc. 2 at 51.*

On February 25, 2010, the date set for Dotson's bench trial, he appeared in the trial court with a newly retained attorney, who moved to continue. The court granted the motion and set a new trial date of March 15, 2010. *Id.*

On March 15, 2010, Dotson's attorney filed a motion to dismiss the criminal charges pending in Pulaski County because more than ten years had elapsed since

Dotson's arrest in December 1999.[3] The motion further argued that: (1) because the State of Arkansas failed to place a detainer on Dotson, upon receiving his May 10, 2000 letter advising of his whereabouts, the period between June 26, 2000 and December 31, 2009 should not be excluded from the  speedy trial calculation based on his "unavailability"; and (2) the May 10, 2000 letter constituted a request for a speedy trial. *Id., doc. 23-15*. The trial court granted a joint motion to continue the bench trial scheduled for March 15, 2010. *Id., doc. 31 at 8; Doc. 2 at 51.*

On April 27, 2010, the trial court held a hearing on Dotson's motion. At the conclusion of the hearing, the trial court found that no speedy trial violation occurred because, for purposes of speedy trial calculation under Arkansas's procedural rules, the following periods were excluded: (1) June 26, 2000 (the date Dotson failed to appear for his first scheduled trial) to December 31, 2009 (the date he was extradited to Arkansas on the failure to appear warrant); and (2) January 15, 2010 to April 27, 2010, the time period covered by the continuances granted by the court at Dotson's request.[4] *Doc. 2 at 51; Doc. 9-2 at 25-26; see Doc. 12-1 at 25-30.* The trial court later

---

[3]Under Arkansas's speedy trial rules, if a criminal defendant is not brought to trial within twelve months from the date of his arrest or service of summons, the charges must be dismissed. *See* Ark. R. Crim. P. 28.1, 28.2, 30.1.

[4]Arkansas's rules exclude, from the speedy trial computation, any period of delay resulting from: (1) the "absence or unavailability" of the defendant; and (2) continuances granted at the request of the defendant or his counsel. Ark. R. Crim. P. 28.3(c) & (e).

entered an order denying Dotson's motion. *Dotson I, doc. 23-16*.

On May 14, 2010, Dotson's attorney filed a petition for writ of prohibition with the Arkansas Supreme Court, seeking to "prohibit the Pulaski County Circuit Court, Fourth Division, from trying him on this matter" due to violations of Arkansas's speedy trial rules and "constitutional due process requirements," and because the trial court was "wholly without jurisdiction." *Id., doc. 23-17*.

On August 6, 2010, the Arkansas Supreme Court issued a Formal Order summarily denying, without prejudice, Dotson's petition for writ of prohibition. *Id., doc. 23-18*.

On October 13, 2010, a new attorney entered an appearance on Dotson's behalf. *Id., doc. 31 at 8*.

On January 3, 2011, Dotson initiated a § 2254 habeas action in this Court, alleging that he was being detained in violation of the Interstate Agreement on Detainers Act ("IAD"), the speedy trial provisions of Ark. R. Crim. P. 28.1, and "his constitutional rights under [the] 4th, 5th, 6th, and 14th Amendments of the U.S. Constitution." *Id., doc. 1*.

On January 19, 2011, Dotson entered a negotiated guilty plea to: (1) one count of possession of cocaine, reduced from possession with intent to deliver; and (2) one count of possession of marijuana with intent to deliver. The prosecutor *nolle prossed*

the drug paraphernalia charge. Dotson was sentenced to 120 months of imprisonment on each of his two convictions, to be served concurrently, with 479 days of jail credit. *Doc. 9-2 at 4-8; Doc. 2 at 20-21.* On February 11, 2011, Dotson's Judgment and Commitment Order was entered. *Doc. 9-2 at 5-8.*

On May 10, 2011, Dotson filed a *pro se* Rule 37 petition in the trial court arguing that: (1) he received ineffective assistance of counsel because his lawyers did not move for dismissal of the case under the IAD, request "reconsideration" of the Arkansas Supreme Court's denial of his petition for writ of prohibition, adopt any of his *pro se* motions,[5] raise a  speedy trial defense under the Uniform Mandatory Disposition of Detainers Act ("UMDDA"), or obtain a ruling on any motions;[6] (2) he "should never [have] been tried" under Arkansas's speedy trial rules, the IAD, and the UMDDA; (3) his sentence was "illegal" and denied him "due process and equal protection of the law" under the United States Constitution; and (4) he was denied the right to appeal because the Arkansas Supreme Court did not make any written findings

---

[5]Dotson filed two *pro se* motions in the trial court, both of which were denied because he was represented by counsel. *Doc. 2 at 58, 61; Dotson I, doc. 1 at 31-44, 46-52.*

[6]Dotson's second attorney filed motions to suppress: (1) statements made by Dotson at the time of arrest; and (2) evidence seized from him. *Doc. 2 at 56-57, 59-60.* Dotson contended the trial court never ruled on those motions.

of fact when it denied his petition for writ of prohibition. *Doc. 9-2 at 9-18.*[7]

On August 26, 2011, the trial court entered an order denying Rule 37 relief. *Id. at 25-28.* In its order, the court summarized its conclusions from the April 27, 2010 hearing on Dotson's speedy trial motion:

> At the conclusion of the hearing, the Court ruled that the periods of time from June 26, 2000, until December 31, 2009, and January 15, 2010, until April 27, 2010, were excluded from speedy trial computation, and made docket entries to that effect. The Court concluded that after excluding those periods, two hundred seventeen days of the time permitted to try the defendant had elapsed, and one hundred forty-eight days remained for speedy trial purposes. The Court agreed with the State's position that there was no basis upon which to place a detainer against the defendant with New York authorities prior to the issuance of the failure to appear warrant, and that the defendant's failure to appear for trial on June 26, 2000, was of his own volition since he was not incarcerated at that time.

*Id. at 26.* Based on those conclusions, the trial court went on to hold: (1) the provisions of the IAD were not applicable to Dotson because no detainer was ever placed on him;[8] (2) his right to a speedy trial was not violated; and (3) he could have raised the speedy trial issue in a direct appeal, if he had gone to trial and been

---

[7]In a "Brief in Support of Amended & Supplemental Rule 37 Petition," Dotson argued: (1) his attorneys were ineffective in failing to argue that, because of the speedy trial violation, the trial court lacked jurisdiction to accept his guilty plea; (2) the prosecutor engaged in misconduct by continuing to pursue the charges against him despite the speedy trial violation; (3) he was denied due process and a fair trial because of the speedy trial violation; and (4) "had counsel been honest with [him] and pursued the issues of speedy trial and the detainer," he "would not have pled guilty." *Id. at 21-24.*

[8]The IAD is an interstate compact creating uniform procedures for lodging and executing detainers. *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).

convicted, "but by entering a negotiated plea of guilty he waived the opportunity to do so." *Id. at 26-27.*

Finally, the trial court concluded that Dotson's ineffective-assistance claims were without merit because: (1) his first attorney "did in fact" argue, at the hearing on April 27, 2010, that the IAD required the placement of a detainer against Dotson while he was in custody in New York, although counsel made the IAD argument "in the context of a speedy trial violation"; (2) Dotson presented no legal basis for his attorney to have requested reconsideration of the Arkansas Supreme Court's denial of the petition for writ of prohibition; (3) Dotson provided no basis upon which his second attorney could have "reargued motions which had already been ruled on by the Court" regarding the  speedy trial and IAD claims; (4) he provided no "factual substantiation" for his due process and equal protection claims; and (5) he provided no legal basis for contending that he was denied access to the courts or an appeal. *Id. at 27-28.*

On September 19, 2011, Dotson filed a timely notice of appeal of the trial court's denial of his Rule 37 petition to the Arkansas Supreme Court. *Id. at 29-30.*

On January 19, 2012, United States District Judge D.P. Marshall Jr. granted Dotson's motion to dismiss his § 2254 habeas action, without prejudice, based on the pendency of his Rule 37 appeal in state court. *Dotson I*, *docs. 32-33.*

On October 3, 2013, the Arkansas Supreme Court affirmed the trial court's order denying Rule 37 relief.[9] *Dotson v. State*, 2013 Ark. 382 (*per curiam*) (*Dotson II*). The Court rejected Dotson's claim that, if his attorneys had raised a speedy trial claim based on the IAD, he would not have entered a guilty plea:

> The IAD Act did not apply under the circumstances in appellant's case, and it therefore follows that the Act did not trigger a requirement that the State file a detainer under the Act, set a different limitation on time for trial, or create any other right based on diversity of citizenship. Article III(a) of the IAD Act provides that when a person is serving a term of imprisonment in a correctional institution of a state and "there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner," the prisoner shall be brought to trial within 180 days after the prisoner provides written notice of the place of his imprisonment and requests a final disposition of the charges. Ark. Code Ann. § 16-95-101. Under the statute, there must be a detainer lodged for the specific charges at issue before the Act applies. *See Grant v. United States*, 856 A.2d 1131 (D.C. Cir. 2004). The IAD Act does not require the filing of a detainer, and its provisions requiring a trial within a certain period of time or granting other rights are only applicable when a detainer has already been filed.

> Appellant cannot prevail on his claim of ineffective assistance of counsel because he failed to demonstrate that the argument he contends counsel should have made had merit. *See Mitchell v. State*, 2012 Ark. 242.

*Id.* at 4. The Court also held that, because the IAD was inapplicable, there was no merit to Dotson's due process and equal protection claims based on violation of any

---

[9]The Court also denied, as moot, two motions filed by Dotson: a "Leave of Motion for Writ of Mandamus," and a "Motion to Grant Appeal and Dismiss Charges." *Doc. 12-1 at 9-17*.

of the IAD's provisions. *Id.* at 5.

Finally, the Court rejected Dotson's claim that, because the trial court had no jurisdiction to accept a guilty plea after the expiration of the time for a "speedy trial," his due process and equal protection rights were violated:

> Claims of trial error, even those of constitutional dimension, are not cognizable in a Rule 37.1 proceeding unless the error is so fundamental that it renders the judgment of conviction void or subject to collateral attack. *See Davis v. State*, 2013 Ark. 118 (per curiam). Although appellant alleged a jurisdictional issue, speedy-trial claims do not raise a question of jurisdiction. *See Rodgers v. Hobbs*, 2011 Ark. 443 (per curiam).

*Id.* at 5 n.5.

On November 14, 2013, the Supreme Court denied Dotson's *pro se* motion for reconsideration. *Doc. 12-1 at 1, 6-7.*

Dotson then initiated this § 2254 action, which asserts the following habeas claims:

> (1)    By failing to place a detainer on Dotson to have him brought back to Arkansas after completion of his imprisonment in New York, the State of Arkansas violated Ark. R. Crim. P. 29.1, the Interstate Agreement on Detainers, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution;[10]

> (2)    The trial court lacked "subject matter jurisdiction" to convict him due to the lack of a "permanent detainer" and because his charges were based

---

[10]In his habeas papers, Dotson also references the UMDDA. *Doc. 2 at 5, 39-40; Doc. 3 at 4.* Because Arkansas has not adopted the UMDDA, its provisions clearly are inapplicable and will not be discussed further.

11

on a "stale warrant" and had "expired" under Ark. Code Ann. § 5-1-109, in violation of Ark. R. Crim. P. 27-30 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

(3)    The State of Arkansas violated Arkansas's speedy trial rules and failed to act with due diligence in concluding its prosecution of Dotson; and

(4)    Dotson received ineffective assistance from his two retained attorneys.

*Docs. 2, 3 & 11.* Respondent contends that Dotson's claims: (1) are not cognizable in federal habeas proceedings; (2) were waived by Dotson's guilty plea; and (3) are without merit. *Doc. 9.*

For the reasons discussed below, the Court recommends that all of Dotson's habeas claims be dismissed with prejudice.

## II. Discussion

### A.    State Law Violations

Federal habeas corpus relief is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Thus, this Court is bound by the Arkansas courts' determination that no speedy trial violation occurred under the state's rules governing the time for trial. *See Reynolds v. Leapley*, 52 F.3d 762, 763 (8th Cir. 1995) (claim that "state officials violated the state speedy trial law" does not present "a federal claim reviewable on a habeas petition"); *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) (same); *Matthews v. Lockhart*, 726 F.2d 394, 396 (8th Cir. 1984) ("The

question of whether the state violated its own speedy trial statute is a matter for the state courts."); *Wallace v. Lockhart*, 701 F.2d 719, 729 (8th Cir. 1983) (same).[11]

Accordingly, this Court cannot review Dotson's claims that Arkansas's speedy trial laws was violated.[12]

## B.    IAD Violations

A violation of the IAD, "without more," does not justify relief in a federal habeas action. *Poe*, 39 F.3d at 207; *accord Reynolds*, 52 F.3d at 763. IAD violations are cognizable on collateral habeas review only where the error qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994).

As previously discussed, the Arkansas Supreme Court determined that the

---

[11]Compliance with state speedy trial laws does not necessarily mean that the United States Constitution has been satisfied. *Williams v. Lockhart*, 772 F.2d 475, 478-79 (8th Cir. 1985) (regardless of state law compliance, federal habeas court must apply *Barker v. Wingo* test to determine whether speedy trial violation occurred under Sixth Amendment); *Matthews*, 726 F.2d at 396 (whether a state law violation abridges a habeas petitioner's right to a speedy trial under the due process clause "depends primarily upon whether there has been any fundamental unfairness and prejudice"); *Wallace*, 701 F.2d at 729 (federal habeas review is limited to "whether the state's violation of its own speedy trial rules was so fundamentally unfair and prejudicial to petitioner as to deny him due process"). However, as explained in Sections II(C)-(D), any remaining constitutional claims were waived by Dotson's guilty plea.

[12]For the same reasons, this Court cannot review Dotson's claim based on Ark. Code Ann. § 5-1-109, which governs when a state criminal prosecution must be commenced by the filing of charges.

IAD's protections were not applicable to Dotson's case because: (1) during the short time that Dotson was incarcerated in New York, the State of Arkansas did not file a detainer with New York; (2) the IAD did not require the filing of a detainer; and (3) because the IAD was inapplicable, there was no merit to his constitutional claims based on IAD violations. *Dotson II, supra at 4-5*. These determinations were not contrary to, or an unreasonable application of, clearly established federal law, nor were they based on unreasonable factual findings.[13] *See United States v. Mauro*, 436 U.S. 340, 343 (1978) (holding that the IAD is "triggered only when a 'detainer' is filed with the custodial ... State by another State ... having untried charges pending against the prisoner"); *Fex v. Michigan*, 507 U.S. 43, 50 n.4 (1993) (noting that "the IAD does not *require* detainers to be filed") (emphasis in original); *United States v. Moore*, 822 F.2d 35, 37 (8th Cir. 1987) (without the filing of a detainer, "the IADA is inapplicable").

Accordingly, Dotson's claims that the IAD was violated are without merit and

---

[13]Where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief, on the adjudicated claim, in only three limited situations: (1) the state court adjudication was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); (2) the state court adjudication "involved an unreasonable application" of clearly established federal law, *id.*; or (3) the state court adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). To be entitled to § 2254 deference, the state court's decision need not cite the applicable Supreme Court opinions, "so long as neither the reasoning nor the result" contradicts the governing precedent. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

should be dismissed.

### C.    Federal Constitutional Claims[14] Waived by Dotson's Guilty Plea

The law is well established that a voluntary guilty plea forecloses an attack, through federal habeas proceedings, on non-jurisdictional defects that occurred prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970); *Weisberg v. Minnesota*, 29 F.3d 1271, 1279-80 (8th Cir. 1994); *Cox v. Lockhart*, 970 F.2d 448, 453 (8th Cir. 1992).

Speedy trial violations are *not* jurisdictional defects, even if they rise to the level of a constitutional deprivation. *Cox*, 970 F.2d at 453 (voluntary guilty plea waived Sixth Amendment right to a speedy trial, which was "non-jurisdictional in nature"); *Becker v. Nebraska*, 435 F.2d 157, 157-58 (8th Cir. 1970) ("The issue of the right to a speedy trial is non-jurisdictional in nature."). Similarly, IAD violations are non-jurisdictional defects waived by a valid guilty plea. *Baxter v. United States*, 966 F.2d 387, 389 (8th Cir. 1992); *Camp v. United States*, 587 F.2d 397, 399-400 (8th Cir. 1978).

Dotson argues that his guilty plea did not constitute a waiver of his habeas claims because the trial court "had no jurisdiction to accept even a guilty plea" due to

---

[14]The Sixth Amendment's right to a speedy trial is "fundamental" and applies to state court proceedings pursuant to the Due Process Clause of the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515 (1972).

the speedy trial violations. *Doc. 11 at 4*. However, the Arkansas Supreme Court *flatly rejected* Dotson's claim that the trial court was without jurisdiction to accept his guilty plea or sentence him, holding, in accordance with established state law, that "speedy-trial claims do not raise a question of jurisdiction." *Dotson II*, *supra at 5 n.5*. This Court is bound by the Arkansas Supreme Court's determination that a speedy trial violation does *not* divest the trial court of jurisdiction. *See Poe*, 39 F.3d at 207 (the question of whether Missouri courts had jurisdiction to sentence defendant, despite speedy trial violation, "was one solely of state law" and not properly before a federal habeas court; state courts' determination of jurisdiction was binding on the federal habeas court).

Thus, as long as Dotson's guilty plea was voluntarily entered, he waived *all* claims that his right to a speedy trial was violated, regardless of whether those claims arose under federal or state law.

### D.  Voluntariness of Dotson's Guilty Plea

The "longstanding test" for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In *Hill*, the Court held that, where "a defendant is represented by counsel during the plea process and enters his plea

16

upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Id.* (quoting *McMann*, 397 U.S. at 771). *Hill* further held that review of challenges to guilty pleas, based on ineffective assistance of counsel, is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill*, 474 U.S. at 58-59.

Accordingly, to overcome the waiver of his speedy trial claims, Dotson must show that: (1) in advising him to plead guilty, his counsel's representation fell below an "objective standard of reasonableness"; and (2) Dotson was "prejudiced" in that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

The only arguments that Dotson now raises about the voluntariness of his guilty plea are derivative of his speedy trial claims.[15] It is clear that the basis of his "involuntariness" claim is that his counsel unreasonably advised him to plead guilty,

---

[15]Specifically, Dotson argues: (1) he "did not knowingly and intelligently understand that he was pleading guilty to charges that were null, void, and certainly without subject matter jurisdiction [due to the alleged speedy trial violations]," *Doc. 3 at 3-4*; (2) the attorney who represented him in connection with his guilty plea "coerced [a] plea bargain" by refusing to pursue any speedy trial issues, *Doc. 2 at 10*; (3) the attorney "coerced [him] to take an illegal plea deal," *Doc. 11 at 4*; and (4) he "never knowingly and willingly would have accepted a guilty plea if either attorney had tried to help [him] in his defense," *Doc. 11 at 6*. These are the same arguments Dotson made in his Rule 37 proceeding in state court. *Doc. 9-2 at 22-23; Doc. 12-1 at 32, 35-37, 66-67.*

instead of pursuing what Dotson perceived as a meritorious speedy trial claim.

Counsel's performance does not fall "below an objective standard of reasonableness," under *Strickland*'s first factor, if the claim that was not pursued was *without merit. See Knowles v. Mirzayance*, 556 U.S. 111, 123-24 (2009) ("defense counsel's performance was not deficient when he counseled [the defendant] to abandon a claim that stood almost no chance of success" and which counsel reasonably believed "was doomed to fail"). In addition, resolution of *Strickland*'s "prejudice" inquiry "will depend largely on whether the affirmative defense [that counsel allegedly failed to argue] likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

At the time Dotson's attorney advised him to plead guilty, both the trial court and the Arkansas Supreme Court had rejected Dotson's claims that Arkansas's speedy trial rules had been violated. The trial court also had rejected Dotson's specific argument that the IAD required the state to lodge a detainer. In denying the petition for writ of prohibition, the Arkansas Supreme Court had summarily rejected Dotson's arguments that his speedy trial rights were violated based on "constitutional due process requirements" and the trial court's lack of jurisdiction. *See Doc. 2 at 51; Doc. 9-2 at 26-27; Dotson I, doc. 23-18*.

Having seen the trial court and the Arkansas Supreme Court *repeatedly reject*

Dotson's various speedy trial arguments, it was *not* objectively unreasonable for his counsel to advise him to plead guilty to significantly reduced charges, rather than reargue issues that had already been adjudicated against him. *See Premo v. Moore*, 562 U.S. 115, 124 (2011) (in evaluating counsel's advice leading to a guilty plea, "habeas courts must respect their limited role in determining whether there was manifest deficiency *in light of information then available to counsel*"); *New York v. Hill*, 528 U.S. 110, 115 (2000) (counsel may properly make a strategic decision to "assess the benefit or detriment of the delay" and waive his client's speedy trial rights).

In Dotson's Rule 37 proceedings, both the trial court and the Arkansas Supreme Court held that Dotson had no speedy trial argument with a reasonable likelihood of success. The trial court: (1) reiterated that no state speedy trial violation occurred; (2) explicitly held that no IAD violation occurred; and (3) found no basis for a due process or equal protection claim. *Doc. 9-2 at 26-28*. The Arkansas Supreme expressly held that there was no merit to Dotson's speedy trial arguments based on the IAD, due process and equal protection, or lack of jurisdiction. *Dotson II, supra at 4-5*.

The only speedy trial argument not expressly rejected by the state courts was a Sixth Amendment claim, which Dotson attempted to raise *pro se* in his state proceedings, even though he was represented by counsel at the time. The trial court

declined to rule on the *pro se* motion because Dotson was represented by counsel.[16]
*See Dotson I, doc. 1 at 48-50; Doc. 2 at 58.*

Thus, Dotson has not demonstrated a reasonable probability that a Sixth Amendment claim would have been any more successful than his other speedy trial arguments. The Eighth Circuit addressed a similar situation in *Cox*:

> It reasonably follows that pursuing the Sixth Amendment speedy trial claim would have presented precisely the same risks as pursuing the state speedy trial claim. There is no basis to conclude that the Sixth Amendment speedy trial claim was more "winnable" that the state claim. ... [I]t seems plausible to conclude that traditional analysis of any Sixth Amendment speedy trial claim may well charge the reason for the delay in getting to trial against the appellant. All things considered, advising appellant Cox to accept the plea, rather than risk the death penalty or life without parole, appears to have been a reasonable strategy amounting to reasonably competent advice.

*Cox*, 970 F.2d at 455-56. As in *Cox*, there is no basis to conclude that Dotson's Sixth Amendment speedy trial claim would have been more "winnable" than his claims based on state law, lack of jurisdiction, or the IAD.

In evaluating a Sixth Amendment speedy trial claim, the Court must apply the test articulated in *Barker v. Wingo*, *supra*, which requires the balancing of four factors: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of

---

[16]In his Rule 37 pleadings, Dotson argued that his attorneys were ineffective for failing to "adopt" his *pro se* motions in general. *Doc. 9-2 at 22*. In his Rule 37 appeal, he argued that he "attempt[ed] to assert his 6th Amendment rights to a speedy trial" but neither the attorneys nor the courts applied the *Barker* analysis. *Doc. 12-1 at 39. Sub silentio*, both the trial court and the Arkansas Supreme Court rejected those arguments in denying Rule 37 relief.

his speedy trial right; and (4) prejudice to the defendant. 407 U.S. at 530-32. While the eleven-year delay between Dotson's initial arrest in December 1999 and his plea hearing in January 2011 is certainly "extraordinary,"[17] the other three *Barker* factors weigh heavily against him.

Most importantly, the record is clear that the primary reason for the long delay in resolving Dotson's criminal charges was his intentional failure to appear for his June 26, 2000 trial in Arkansas,[18] followed by ten years of fugitive status outside the charging jurisdiction.[19] *See Reynolds*, 52 F.3d at 764 (no Sixth Amendment violation because "[m]ost of the [nine-year] delay was caused by the fact that Reynolds fled the jurisdiction following his offense and became incarcerated elsewhere").[20] In addition,

---

[17]In *Barker* the Supreme Court found a delay of "well over five years ... extraordinary." 407 U.S. at 533.

[18]After holding a hearing on Dotson's speedy trial motion, the trial court found that Dotson's failure to appear for trial on June 26, 2000 "was of his own volition since he was not incarcerated at that time." *Doc. 9-2 at 26*. This Court must presume that factual finding to be correct. *See* 28 U.S.C. § 2254(e)(1) (a federal habeas court must presume any factual findings made by the state court to be correct unless rebutted by clear and convincing evidence).

[19]Nothing in the record indicates that, between his release from incarceration in New York on June 16, 2000 and his arrest in Tennessee in December 2009, he ever contacted his attorney or the court regarding his June 26, 2000 trial date or the pending criminal charges. According to one of his state-court filings, Dotson was in at least three different states between June 2000 and 2008. *Doc. 12-1 at 31* (New York, Texas, Tennessee). It is also significant that his state records reflect at least two aliases ("Tony Johnson" and "Timothy Smith"), which would have further hindered apprehension. *See, e.g., Doc. 2 at 49-50 & Doc. 9-2 at 4 (trial court docket sheets); Doc. 9-3 (felony information); Doc. 2 at 16 (arrest report).*

[20]*See also Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988) (four and one-half year period, during most of which defendant was a fugitive who failed to appear before courts, jumped bail, and attempted to avoid prosecution of charges against him, was attributable to

nothing in the record indicates that the state in any way contributed to the delay by acting in bad faith or trying to hamper Dotson's defense. *See Robinson v. Leapley*, 26 F.3d 826, 832 (8th Cir. 1994).

It also weighs against Dotson that his May 10, 2000 letter to the state trial judge requested *a continuance* of the trial date and that, during the ensuing ten years, Dotson made no effort to follow up on his request with the court or his public defender, to assert his right to a speedy trial, or to see that the pending charges were brought to trial. Rather, his fugitive status for the next decade is clear evidence of his lack of interest in a speedy prosecution of his case. *See Reynolds*, 52 F.3d at 764 (if defendant "truly feared that his rights were being violated and that he would be prejudiced by the delay, he would have sent proper notice much earlier").

Finally, Dotson's allegations of "a prejudicial speedy trial violation" are unsupported by any facts or explanation. Dotson was not incarcerated during most of the ten-year period, and his conclusory allegations are insufficient to demonstrate that he suffered any specific trial-related prejudice or disadvantage attributable to the

---

defendant for Sixth Amendment speedy trial purposes); *Sullivan v. State*, 2012 Ark. 74, at 7-8, 386 S.W.3d 507, 513-14 (in a state law context, noting the "pivotal factual distinction" between a speedy trial claim involving "an arrest warrant for the initial criminal charge," and a warrant for "failure to appear at a trial that was set to occur within the speedy-trial time"; holding that the state's delay in serving the failure-to-appear warrant "had no effect on the calculation of [the] speedy-trial time for the [underlying criminal] charges"); *State v. Haynes*, 456 N.E.2d 1279, 1282 (Ohio Ct. App. 1982) (where an accused "actively absents himself from a trial, escapes, absconds, becomes a fugitive, or resists extradition proceedings intended to bring him to trial, he is generally not entitled to the constitutional protection afforded by the Speedy Trial Clause").

delay. *See Barker*, 407 U.S. at 532 (prejudice must be assessed in light of interest in preventing oppressive pretrial incarceration, minimizing accused's anxiety and concern, and limiting possibility that the defense will be impaired); *Reynolds*, 52 F.3d at 764 (defendant failed to establish prejudice from nine-year delay under *Barker*); *Robinson*, 26 F.3d at 832 (petitioner "pointed to no prejudice flowing from the delay"); *see also United States v. Summage*, 575 F.3d 864, 875 (8th Cir. 2009) (no *Barker* prejudice based on strains to family ties and relationships, which "may occur in criminal prosecutions generally, without regard to a speedy trial violation"). Accordingly, Dotson has not demonstrated that a Sixth Amendment speedy trial claim was reasonably likely to succeed.

Because Dotson has not established that he had a meritorious speedy trial claim under state or federal law, his attorney *reasonably advised him* to accept a favorable plea bargain, rather than continue to pursue arguments that were unlikely to succeed. Thus, this advice from his attorney clearly was "within the range of competence demanded of attorneys in criminal cases" and provides no basis for finding Dotson's guilty plea to be "involuntary." *See Hill*, 474 U.S. at 56.

Finally, nothing in the state-court record suggests that Dotson's guilty plea was anything other than "a voluntary and intelligent choice among the alternative courses of action open to [him]." *Id.*; *see Becker*, 435 F.2d at 158 (habeas petitioner's "actions

relative to entering his plea of guilty indicate an actual, knowing waiver of his claim of an unconstitutional denial of a speedy trial").

According to the record, Dotson executed a Plea Statement, on January 19, 2011. In this document, he acknowledged that: (1) he fully understood the charges against him; (2) he understood he was facing a possible sentence of up to twenty years of imprisonment; (3) he understood he was waiving his right to a trial by jury and his right to appeal any adverse determinations; (4) he had fully discussed the case with his attorney and was satisfied with the attorney's services; (5) his plea had "not been induced by any force, threat or promise, apart from a plea agreement"; (6) if his case went to trial, the state could meet its burden of proving his guilt beyond a reasonable doubt; and (7) he "fully under[stood] every detail of [his] guilty plea." *Doc. 2 at 20-21*. Finally, he stated: "I fully understand what my rights are, and I freely, knowingly and voluntarily plead guilty because I am in fact guilty as charged." *Id. at 21*. Dotson's attorney also signed the Plea Statement, and attested that he had "carefully and completely" explained the document to Dotson, who appeared to "fully understand all of it." *Id.*

The same day that Dotson and his attorney executed the Plea Statement, they appeared in the trial court for a change-of-plea hearing.[21] *Doc. 9-2 at 4; Dotson I, doc.*

[21]According to Respondent, the plea hearing was not transcribed. *Doc. 9 at 4 n.2.*

*31 at 9*. According to the docket sheet, the trial court granted the state's motions: (1) to reduce the cocaine charge to simple possession, rather than possession with intent to deliver; and (2) to *nolle pros* the drug paraphernalia charge. The court accepted Dotson's guilty plea and imposed two concurrent 120-month sentences. *Id.*

In Dotson's Judgment and Commitment Order, the trial court expressly found that Dotson "voluntarily, intelligently, and knowingly entered a ... negotiated plea of guilty" to possession of cocaine and possession of marijuana with intent to deliver. *Doc. 9-2 at 5-6*. Later, in denying Rule 37 relief, the trial court noted that Dotson could have raised the  speedy trial issues on direct appeal, "but by entering a negotiated plea of guilty he waived the opportunity to do so." *Doc. 9-2 at 27*.

Based on this record, the Court concludes that, because Dotson's guilty plea was voluntary, he waived all claims of a speedy trial violation arising under federal and state law.

### E.    Ineffective Assistance of Counsel

Dotson argues that he received ineffective assistance from the two retained attorneys who represented him in his state court proceedings.[22]

---

[22]Specifically, Dotson argues that his first retained attorney: (1) "abandoned [him] in the middle of appeal"; (2) refused to adopt any of Dotson's *pro se* motions; (3) refused to advise him "of the intricate details of his case"; and (4) refused to file a motion for reconsideration after the Arkansas Supreme Court denied the petition for writ of prohibition. Dotson argues that his second retained attorney: (1) "refused to raise" issues or "adopt any of [Dotson's] motions"; (2) "never got a ruling on any motions"; (3) never explained any of the legal proceedings to Dotson;

To the extent that any of his arguments relate to the pre-plea action or inactions of his attorneys, which were *not* connected to the entry of his guilty plea, those arguments were waived when Dotson pled guilty. *See Tollett*, 411 U.S. at 266-67; *Thundershield v. Solem*, 565 F.2d 1018, 1026-27 (8th Cir. 1977); *Whitepipe v. Weber*, 536 F. Supp. 2d 1070, 1082-83 (D.S.D. 2007) (habeas petitioner "may only present [ineffective assistance of counsel] claims relating to the plea advice" that go to the voluntariness of the plea).

As previously discussed, the Arkansas Supreme Court explicitly rejected Dotson's claim that, if his attorneys had raised an IAD argument, he would not have pleaded guilty. The Court held that Dotson could not prevail on his ineffective-assistance claim because he had not demonstrated there was any merit to the IAD argument he contended that counsel should have raised. This decision was not contrary to, or an unreasonable application of, the ineffective-assistance standards set forth in *Strickland* and *Hill*.[23]

Dotson's remaining ineffective assistance of counsel arguments, related to his entry of a guilty plea, also fail for the reasons previously discussed, *i.e.*, those

---

and (4) "coerced [a] plea bargain" and an "illegal plea deal." *Doc. 2 at 10; Doc. 3 at 1; Doc. 11 at 4 & 6.*

[23]Although the Arkansas Supreme Court did not cite *Strickland* or *Hill*, it cited state cases that explicitly articulated and relied on those precedents. *Dotson II, supra* at 3 n.4 & 5.

arguments are all derivative of his various speedy trial arguments, which were determined to be without merit or unlikely to succeed.

Accordingly, because Dotson's ineffective assistance of counsel claim is without merit, it should be dismissed.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 2*, be DENIED, and that this case be DISMISSED in its entirety, with prejudice.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED, as Davis has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED THIS 17th DAY OF April, 2015.

_____
UNITED STATES MAGISTRATE JUDGE